IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GLENN EILERT,                    §
                                 §
          Plaintiff,             §
                                 §
VS.                              §   CIVIL ACTION NO. H-13-3758
                                 §
CHARLES I. TURNER,               §
                                 §
          Defendant.             §

OPINION AND ORDER

Pending before the Court in the above referenced cause, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1602 *et seq.*, are Plaintiff Glenn Eilert's motion for summary judgment (instrument #33) and (2) motion for reconsideration (#39) of the Court's January 22, 2015 Opinion and Order (#35) denying Plaintiff's motion for partial summary judgment on the pleadings.  Because Defendant Charles I. Turner, a licensed attorney from New Jersey proceeding *pro se*, has not responded to the lengthy motion to reconsider, because in the interests of justice the Court prefers to rest its final decision on the fuller record of the summary judgment motion, to which Defendant has responded, and its related evidence, and because the Court's resulting decision on the motion for summary judgment moots the motion for reconsideration, the Court vacates its previous Opinion and Order (#35) and addresses only the motion for summary judgment.

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to

support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991). The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477

U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

Under Federal Rule of Civil Procedure 8(b)(1) "In responding to a pleading a party must . . . (A) state in short plain terms its defenses to each claim asserted against I; and (b) admit or deny the allegations against it by an opposing party.   Under Rule 8(b)(6), addressing the effect of a failure to deny, "An allegation-other than one relating to the amount of damages-is admitted if a responsive pleading is required and the allegation is not denied."

## Applicable Law

Congress enacted the FDCPA to eliminate "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *McMurray v. Precollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012), *citing* 15 U.S.C. § 1692(e).  Courts refer to the FDCPA as a strict liability statute because it imposes liability without requiring proof of an intentional violation.   *Thompson v. Diversified*

*Adjustment Service, Inc.*, No. Civ. A. H-12-922, 2013 WL 3973976, at *4 (S.D. Tex. July 31, 2013)(and cases cited therein). Nevertheless 15 U.S.C. § 1692k(c) provides an exception:  "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

A "debt collector" is statutorily defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Before 1986 the FDCPA, 15 U.S.C. § 1692a(6)(F), expressly excluded attorneys as debt collectors acting on behalf of, and in the name of, a client.  In 1986 Congress amended the Act to eliminate this exclusion and to deem attorneys who regularly collect consumer debts due or owed to another to be "debt collectors" within the meaning of the statute.  In *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995), the United States Supreme Court held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."  *See also* 15 U.S.C. § 1692a(6); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226. 232 (4th Cir.

-5-

2007)("All circuits to consider the issue, except for the Eleventh, have recognized the general principle that the FDCPA applies to the litigation activities of attorneys who qualify as debt collectors under the statutory definition.").

The term "debt" is statutorily defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Fifth Circuit interprets the term broadly: in response to the Third Circuit's view that an FDCPA debt is restricted to transactions that deal with an extension of credit, the Fifth Circuit opines that the statutory definition "may not be alternatively read to reference only a limited set of obligations . . . . As long as the transaction creates an obligation to pay, a debt is create." *Thompson*, 2013 WL 3973976 at *7, *citing Hamilton v. United Healthcare*, 310 F.3d 385, 391 (5th Cir. 2001).

Under 15 U.S.C. § 1692g(a), a debt collector must, within five days of the initial communication regarding a debt, furnish the consumer with a written notice that states (1) the amount of the debt, (2) the name of the creditor to whom the debt is owed, (3) a statement that unless the consumer disputes the validity of the debt within 30 days, the debt collector will assume the debt is

valid, (4) a statement that if within the 30-day period the consumer notifies the collector in writing that the consumer disputes the debt, the debtor will obtain verification of the debt from the creditor and have a copy of that verification mailed to the consumer; and (5) a statement that if the consumer requests it in writing, the debt collector will provide the consumer with the name and address of the original creditor if it differs from that of the current creditor.  *McMurray*, 687 F.3d at 668, *citing* 15 U.S.C. § 1692g(a).[1]  If the consumer fails to notify the debt

---

[1] Title 15 U.S.C. § 1692g(a) provides,

Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the

collector within 30 days that the debt is disputed, the debt collector may assume that the debt is valid. *Hunsinger v. SKO Brenner American, Inc.*, Civ. A. No. 3:13-cv-0988-D, 2014 WL 1462443, at *3 (N.D. Tex. Apr. 15, 2014.  If the consumer does timely provide written notice that he disputes the debt, the debt collector "shall cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of the judgment." *Id., citing* 15 U.S.C. § 1692g(b).  Thus if the debt collector receives timely notice of a dispute, it may abandon its collection efforts and not be liable even if it does not send the requested verification. *Id., citing Bashore v. Resurgent Capital Servs., L.P.*, 452 Fed. Appx. 522, 524 (5th Cir. 2011), and *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).  A debt collector who does not provide the information  mandated by § 1692g(a) violates the FDCPA.  *Id.*

In addition the notice must "'be set forth in a form and within a context that does not distort or obfuscate its meaning.'" *Id., quoting Peter v. GC Servs., LP*, 310 F.3d 344, 348 (5th Cir. 2002)  Title 15 U.S.C. § 1692g states that the debt collector may violate § 1692g if other language in its communication with the

_____

consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

consumer "'overshadow[s]'" or is "'inconsistent with'" the required notice. *Id.*, *citing* § 1692g.

The district court evaluates possible deception in a communication with the consumer "under an unsophisticated or least sophisticated consumer standard,'" under which "'the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.'" *McMurray*, 687 F.3d at 669, *quoting Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). This standard "'serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials.'" *Id., quoting Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). The Fifth Circuit has not yet decided whether to follow the standard of the least sophisticated consumer or the standard of the unsophisticated consumer. *Id.* at 669 n.3, *citing Peter*, 310 F.3d at 348 n.1.

A debt collector who violates any provision of the FDCPA is civilly liable for actual damages, reasonable attorney's fees, and "additional" statutory damages under 15 U.S.C. § 1692k(a).[2]

---

[2] Section 1692k addresses "Civil liability" and provides in relevant part,

(a) Amount of damages

Except as otherwise provided by this section, any debt
collector who fails to comply with any provision of
this subchapter with respect to any person is liable to
such person in an amount equal to the sum of--

    (1) any actual damage sustained by such person as
a result of such failure;

    (2) (A) In the case of any action by an
individual, such additional damages as the court
may allow, but not exceeding $1000; or

      (B) In the case of a class action, (i) such
amount for each named plaintiff as could be
recovered under subparagraph (A), and (ii) such
amount as the court  may allow for all other class
members, without regard to a minimum individual
recovery, not to exceed the lesser of $500,000 or
1 per centum of the net worth of the debt
collector; and

    (3) In the case of any successful action to
enforce the foregoing liability, the costs of the
action together with a reasonable attorney's fee
as determined by the court.  On a finding by the
court that an action under this section was
brought in bad faith and for the purpose of
harassment, the court may award to the defendant
attorney's fees reasonable in relation to the work
expended and costs.

(b) Factors considered by court

In determining the amount of liability in any action
under subsection (a) of this section, the court shall
consider, among other relevant factors-

    (1) in any individual action under subsection
(a)(2)(A) of this section, the frequency and
persistence of noncompliance by the debt
collector, the nature of such noncompliance, and
the extent to which such noncompliance was
intentional; or

    (2) in any class action under subsection (a)(2)(B)
of this section, the frequency and persistence of

To prevail on claims against a debt collector under the FDCPA, a consumer must show that "'(1) he has been the object of collection activity arising from a consumer debt; 92) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Hunsinger*, 2014 WL 1462443, at *3, *quoting Browne v. Portfolio Recovery Assocs.*, Civ. A. No. H-11-2869, 2013 WL 871966, at *4 (S.D. Tex. Mar. 7, 2013).

**Factual Background**

In his First Amended Complaint (#11), Eilert claims that in an effort to collect consumer debts purportedly owed by Eilert to third parties, Turner sent Eilert three letters that each violated

---

        noncompliance by the debt collector, the nature of
        such noncompliance, the resources of the debt
        collector, the number of persons adversely
        affected, and the extent to which the debt
        collector's noncompliance was intentional.

(c) Intent

A debt collector may not be held liable in any action
brought under this subchapter if the debt collector
shows by a preponderance of evidence that the violation
was not intentional and resulted from a bona fide error
notwithstanding the maintenance of procedures
reasonably adapted to avoid any such error.

(d) Jurisdiction

An action to enforce any liability created by this
subchapter may be brought in any appropriate United
States district court without regard to the amount in
controversy, or in any other court of competent
jurisdiction, within one year from the date on which
the violation occurs.

15  U.S.C.  §  1692g(a)  for  failure  to  provide  debt  validation
information or notice of Eilert's right to dispute the debt.

This pleading, at ¶3, states that Turner "is a New Jersey
attorney practicing primarily in debt collection."  Paragraph 4
represents that Turner "regularly operates as third-party debt
collector and is a 'debt collector' as defined by 15 U.S.C. §
1692a."

It is undisputed, as stated in the Amended Complaint, that on
December 27, 2012, Turner sent Eilert a letter expressly "in an
attempt to collect on a consumer debt" which Eilert purportedly
owed to a third party.  The letter stated in relevant part, *sic*,

> Please be advised that I have been retained by the above
> named client in connection with an outstanding bill in
> the amounts of $825.00.  Your account was placed with
> Accredited Collection Agency, despite numerous attempts,
> this account is still delinquent, which we trust is
> merely an oversight on your part.

This letter was the first communication Turner sent to Eilert on a
debt which the First Amended Complaint states was allegedly owed by
Eilert to "YOUR FAST CASH."[3]  Eilert asserts, but in his Amended
Answer (#17) Turner denies, that Turner never provided Eilert with
the debt validation information or notice of right to dispute the
debt within five days of this communication, as required by 15
U.S.C. 1692g(a).

---

[3] A copy of the actual letter is attached as Exhibit A to the
motion for summary judgment (#33).  The letter states that it is
"an attempt to collect a debt," and identifies the amount due to
Turner's client, MY FAST PAYDAY, AS $825.

It is undisputed that on December 31, 2012, Turner sent Eilert another letter,[4] also expressly "in an effort to collect on a second consumer debt," that was allegedly owed by Eilert to "MYPAYDAYADVANCE."  In relevant part that letter stated,

> I have been retained to review and recommend this account for legal action to collect this debt based on your failure to pay.  I am requesting that you pay the entire balance within 10 days.

This letter was also the first communication that Turner sent to Eilert about this debt to "MYPAYDAYADVANCE."

Eilert alleges, but Turner denies in his Amended Answer, that Turner never provided the debt validation information or notice of right to dispute debt within five days of this communication, as required by 15 U.S.C. § 1692g(a).

On January 15, 2013, it is undisputed that Turner sent Eilert a third letter,[5] also "in an effort to collect" on a separate, third-party consumer debt purportedly owed by Eilert to "MY NEXT PAYDAY."  It reads,

> I have been retained to review and recommend this account for legal action to collect this debt based on your failure to pay.  I am requesting that you pay the entire balance within 10 days.

---

[4] The actual letter is found at #33, Ex. B.  It states at the bottom, "We are debt collectors."  It addresses an alleged debt of $810.00 owed by Eilert to MYPAYDAYADVANCE.

[5] #33, Ex. C is a copy of the actual letter.  This letter also states at the bottom, "We are debt collectors."  It references an alleged debt of $590 purportedly owed by Eilert to MY NEXT PAYDAY.

This letter, too, was Eilert's first communication about the debt allegedly owed to "MY NEXT PAYDAY."

Eilert again asserts, and Turner denies, that Turner never provided Eilert with the debt validation information or notice of right to dispute debt within five days of this communication, in violation of 15 U.S.C. § 1692g(a).

Regarding these allegations in Count One, Eilert claims that Turner lacks standing to bring suit[6] because Eilert never obtained loans or incurred any debts payable to Turner, and therefore owes nothing to Eilert with respect to the debts allegedly owed to MYPAYDAYADVANCE, YOUR FAST PAYDAY, and MY NEXT PAYDAY.

Eilert also charges that before and after he filed this lawsuit, Turner pursued debt collection activities against Eilert but failed to post the requisite bond with the Texas Secretary of State, mandated by section 392.101 of the Texas Finance Code.[7]

---

[6] In his motion to strike Defendant's Counterclaims (#10, which was denied by #24 as moot, since Turner dropped the Counterclaims in his First Amended Answer, #17), Eilert claims that because Turner denies being a debt collector and does not claim to have any right to collect on the alleged debts, he cannot suffer any injury because he has no interest in the alleged debts and thus has no standing.  He is not a creditor because he does not own the debts.

[7] Section 392.101, "Bond Requirement," provides,

(a) A third-party debt collector or credit bureau may not engage in debt collection unless the third-party debt collector or credit bureau has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section. A copy of the bond must be filed with the secretary of

-14-

Finally Eilert claims that as a direct result of Turner's collection activity, Eilert has incurred legal fees in the amount of $3,555.00.

As the basis for Count Two of the First Amended Complaint, Eilert alleges that on February 27, 2014, Turner violated 15 U.S.C. §§ 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.") and 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.") by filing a counterclaim with his Original Answer (#8) against Eilert for alleged debts on which Eilert maintains that Turner had no standing or right to collect.

Count Three alleges that Turner violated 15 U.S.C. § 1692e by misrepresenting to Eilert that Turner is not a "debt collector" as defined in 15 U.S.C. 1692a(6).

Finally Count IV alleges that Turner violated 15 U.S.C. §§ 1692e and 1692f by operating as a debt collector and engaging in

---

state.

(b) The bond must be in favor of:

    (1) any person who is damaged by a violation of this chapter; and

    (2) this state for the benefit of any person who is damaged by a violation of this chapter.

(c) The bond must be in the amount of $10,000.

debt collection against Eilert in Texas, where it is unlawful for Turner to do so.

Eilert's first Amended Complaint seeks statutory damages of $1000 under § 1692k(2); $3,555 for legal costs incurred in responding to Turner's collection activity; prejudgment interest; attorney's fees under § 1692(k); and costs.

On April 8, 2014, in an Amended Answer (#17) to Eilert's First Amended Complaint (#11), Turner dropped his counterclaims and did not deny or otherwise respond to Eilert's newly added causes of action in Counts Two through Four.  In the Amended Answer Turner also asserts two, conclusory, boilerplate affirmative defenses without pleading any supporting facts:  "Plaintiff failed to join necessary parties to this Complaint" and "Plaintiff is barred from recovery based on the doctrine of laches."  *Id.* at ¶¶ 14 and 15.

### Eilert's Motion for Summary Judgment (#33)

Eilert moves for summary judgment on the following statutory grounds on all four Counts in his First Amended Complaint:  (1) Turner violated § 1692g(a) by failing to send Eilert the mandatory debt validation information within five days of Turner's initial communication with Eilert; (2) Turner violated §§ 1692e and 1692f by filing a counterclaim against Eilert for alleged debts for which Turner had no right to collect or no standing; (3) Turner violated § 1692e by misrepresenting to Eilert that Turner was not a debt collector within the definition of § 1692a; and (4) Turner violated

-16-

§§ 1692e and 11692f by acting as a debt collector and engaging in debt collection activities against Eilert in Texas where it was unlawful for Turner to do so.

Eilert insists that Turner's admissions in discovery, pleadings,[8] and letters provide undisputed evidence supporting summary judgment in Eilert's favor on each of the four Counts and that no material fact remains in dispute. Furthermore Turner has not, and cannot, present any evidence supporting his affirmative defenses to Eilert's claims.

Eilert argues that in the proposed Amended Answer attached to Turner's motion to amend his answer again (#26-1 at ¶¶ 7, 9, and 11, filed on August 8, 2014), Turner admitted that he did not send the requisite debt validation information in his letters to Eilert dated December 27, 2012, December 31, 2012, and January 15, 2013 (#33, copies of letters, Exhibits A, B, and C).[9] Eilert further

---

[8] "Factual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). "Judicial admissions 'eliminate the need for evidence on the subject matter of the admission,' as admitted facts are no longer at issue." *Ferguson v. Neighborhood Housing Services of Cleveland, Inc.*, 780 F.2d 549, 550-51 (6th Cir. 1986), *quoting Seven-Up Bottling Co. v. Seven-Up Co.*, 1246, 1251 (E.D. Mo. 1976), *aff'd*, 561 F.2d 1275 (8th Cir. 1977).

[9] The Court observes that because the motion to amend was denied (#32), based on reasons put forth by Eilert in opposition (#30), that Amended Answer was not filed and is not properly part of the record of this case. Even if it were, as will be discussed, Turner raises a genuine issue of material fac regarding Eilert's allegation.

-17-

contends that Turner also admitted in his Reply to Plaintiff's
Request for Admissions (#33-4, Ex. D, ¶¶ 8,14,15[10]), that he did not
send the required debt validation information in the three letters,
which were the only communications Turner had with Eilert.

Eilert maintains that because Turner does not deny that he
lacked standing to sue Eilert for debts allegedly owed to third
parties, he therefore admits that he does.  #11, ¶ 13.  Eilert also
claims that Turner does not deny, and therefore admits, that he
filed an "Answer & Counterclaim" (#17) against Eilert for loans
Eilert allegedly obtained from the three third parties.  #8, ¶¶ 16-
20; #11, ¶ 12.  Nor does Turner deny, and therefore admits, that he
denied being a debt collector.  #11, ¶ 112.  Finally, Turner does
not deny, and therefore admits, that Eilert never obtained nor
otherwise incurred any debts payable to Turner in connection with
the debts allegedly owed to third parties.  #11, § 13.

## Court's Decision

Eilert' original Complaint (#1) states in paragraph 3 that
Turner "is a New Jersey attorney practicing primarily in debt
collection," and in paragraph 4 that Turner "regularly operates as
third-party debt collector and is a 'debt collector' as defined by

---

[10] Eilert states that ¶9 (stating, "You sent a letter on the
letterhead of your legal practice or firm to Mr. Eilert with the
debt validation information or notice of right to dispute the
debt alleged in the December 27, 2012 letter.") was also admitted
by Turner (#33 at p. 4), but Turner denied it, stating "Such a
letter was previously sent to the Plaintiff by my client."

15 U.S.C. 1692a." Turner's Original Answer (#8) states regarding paragraph 3 that he "will stipulate as to the Statements made in this Paragraph", and to as paragraph 4, he "denies the Statement in this Paragraph and puts Plaintiff to his proofs." In Turner's proposed answer attached to his motion for leave to amend his answer (#26-1), he clarifies his Original Answer's response in paragraph 4: "Defendant denies the Statement in this Paragraph to the extent that Defendant 'regularly operates' as a third party debt collector within the State of Texas, and puts Plaintiff to his proofs." The Court interprets this statement as indicating that Turner is contesting Eilert's claim that he regularly collects third party debts *in Texas*. Indeed, in his response in opposition to the motion for summary judgment Turner states, #36 at p.2, "Defendant maintains that he is not regularly engaged in the collection of debts as it applies to the state of Texas. Debtor maintains that the mere sending of three letter to one debtor for different debts who use the same collection agency does not meet the definition of regularly engaged required by the FDCPA." At the very least, Turner's purported "judicial admissions" raise genuine issues of material fact about Turner's qualifications as a debt collector within the meaning of the FDCPA and do not establish a violation of the statute as a matter of law. Moreover, in the three letters at issue, Turner expressly states in each that he has been retained by a specified client to attempt to collect a debt,

-19-

the amount of which is stated, owed by Eilert to that client.  Thus Eilert fails to establish that he is entitled to summary judgment as a matter of law based on his second and third grounds for summary judgment.

As for Eilert's argument based on his request for admissions and Turner's reply (both found at #33-4), here, too, the Court finds Eilert's grounds for summary judgment deficient as genuine issues of material fact exist.  Request for admission No. 8 states, "A letter was sent to Mr. Eilert with the debt validation or notice of right to dispute the debt alleged in the December 27, 2012 letter on the letterhead of 'United Credit Specialists.'"  Request No. 14 states, "A letter was sent to Mr. Eilert with the debt validation information or notice of right to dispute the debt alleged in the December 31, 2012 letter on the letterhead of 'United Credit Specialists.'"  And Request No. 15 states, "You sent a letter on the letterhead of your legal practice or firm to Mr. Eilert with the debt validation information or notice of right to dispute the debt alleged in the December 31, 2012 latter."  First, the Court would point out that none of the three letters sent by Turner to Eilert (#33, Exs. A,B, and C) has the letterhead of United Credit Specialists, but instead each has Turner's personal information as its letterhead.  More significant, to No. 8, Turner replied, "Admitted to the extent that a prior letter was sent to the Plaintiff by my client which had the language required by the

FDCPA."  No. 14 is admitted.  To No. 15, Turner replied, "Admitted
to the extent that a prior letter was sent to the Plaintiff by my
client which had the language required by The FDCPA [*sic*]."
Turner's replies raise a genuine issue of material fact about
Eilert's claim that each letter from Turner was the first sent to
him regarding collection on each of the three debts and whether
those previous letters from the client satisfied 15 U.S.C. §
1692g(a)'s information requirements, Eilert's first ground for
summary judgment.  Since these letters have not been made a part of
the record, there is no way the Court can know.

    Finally, with regard to Turner's failure to post a bond and be
licensed as a collector in Texas (#36 at p. 3), Turner responds
that he is an "in-house attorney for United Credit Specialists,"
the collecting agency, and explains,

> United Credit Specialists is a Tribal Entity created by
> a Sovereign Indian Tribe, the Guideville Indian
> Rancheria.  As a tribal entity, it is immune from suit
> for commercial activities as recognized in *Kiowa Tribe of
> Oklahoma v. Manufacturing Technologies*, [523] U.S. 751
> [1998].[11]  As Defendant was acting as an employee of the
> United Credit Specialists Defendant asserts that he is
> also immune from civil suit.

In *Kiowa Tribe,* noting that "[a]s a matter of federal law, an
Indian tribe is subject to suit only where Congress has authorized
the suit or the tribe has waived its immunity," the majority of the
Supreme Court held that an Indian tribe was entitled to sovereign

---

[11] Turner typographically erred in citing "532" and "1988."

immunity from suit on a promissory note that was signed off the reservation regardless of whether the note related to its commercial activities.   523 U.S. at 754, 759-760 ("Tribes enjoy immunity from suits on contract, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation.").

Although raising a material issue of law, Turner has not provided any evidence to substantiate his claim that United Credit Specialists is a tribal entity created by the Indian tribe, Guideville Indian Rancheria, nor shown that it has not waived it immunity here, nor moved to dismiss based on sovereign immunity from suit.   The Court

ORDERS that within twenty days of entry of the Opinion and Order, Turner shall file with the Court a statement whether he has such evidence and, if he does, an appropriate motion to dismiss this action.

Accordingly, as indicated *supra*, Court further

ORDERS that its previous Opinion and Order (#35) is VACATED. The Court further

ORDERS that Eilert's motion for summary judgment (#33) is DENIED and its motion for partial judgment on the pleadings (#25) is MOOT.

**SIGNED** at Houston, Texas, this __4th__ day of _September_, 2015.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE